# Zacharias *versus* Totton, Sheriff, and the Harrisburg National Bank.

1. Where a sheriff by the direction of an execution-creditor, and under the shield of indemnity furnished by him, seizes and holds the goods of a third party until the execution-creditor institutes proceedings under the Interpleader Act, the sheriff cannot, after the claimant has established his title to the goods, invoke these proceedings, as a complete protection against the demands of the injured party, based on acts of trespass committed before these proceedings were commenced.

2. In an action of trespass *de bonis asportatis*, it appeared that the sheriff found the goods in the possession of the plaintiff, knew that he had advertised them for sale and was fully notified of his claim as owner. Without asking for a rule on the parties to interplead, he took an indemnity-bond from the execution-creditor, levied upon and took possession of the goods on November 15th 1876. No application for a rule to interplead was made until the 4th of December following. *Held*, that neither the sheriff nor the execution-creditor could justify under the Interpleader Act, for anything done prior to the inception of the proceedings thereunder, but so far as they or either of them acted under the direction of the court, or in accordance with the interpleader proceedings they were entitled to claim protection.

May 15th 1879. Before Sharswood, C. J., Mercur, Gordon, Trunkey and Sterrett, JJ. Paxson and Woodward, JJ., absent.

Error to the Court of Common Pleas of *Cumberland county*: Of May Term 1879, No. 123.

Trespass *de bonis asportatis* by George A. Zacharias against Joseph Totton, sheriff, and the Harrisburg National Bank.

As appears in the abstract of proceedings a joint appearance was entered for the defendants, and they jointly pleaded "not guilty." Afterwards, when the case was called for trial, they severally, by leave of court, filed special pleas, both of which are, however, as to the averments of fact in them, identical.

The *narr.* is in the usual form. The special pleas set up: That Totton, one of defendants, was at the time of the alleged trespass sheriff of Cumberland county; that on the 14th November 1876, he received a writ of fieri facias in which the Harrisburg National Bank, the other defendant, was plaintiff, and Samuel Zacharias and Samuel M. Zacharias were defendants; that under said writ he levied on the property set out in the *narr.* and took it as the property of said defendants; that he was notified that it belonged to George A. Zacharias, whereupon, on the 21st November 1876, he asked the court for a rule to interplead; that an issue was made between Zacharias and the Harrisburg Bank, which was finally determined in favor of Zacharias; that meanwhile, pending the issue, the plaintiff having failed to give a bond as required by the order of the court, the court made an order to sell the pro-

[Zacharias *v.* Totton.]

perty and to bring the money into court; that on the final determination of the interpleader proceedings, the fund in court (less the sheriff's costs, &c.,) was paid to the attorney of the plaintiff; that, therefore, there could be no recovery in this action.

The plaintiff replied that *prior to the beginning of the interpleader* proceedings, the defendants *well knowing* that the goods, &c., were the property of George A. Zacharias, and that they were then *actually* in his possession, that he had advertised them extensively to be sold at a public sale on a fixed day, and that on that day, when all was in readiness for the sale, and the bidders were present, they wilfully and maliciously seized upon the goods and broke up the sale; that the defendants had special notice *before the levy* of the ownership and possession of this plaintiff; that the sheriff refused to make the levy until indemnified by the bank, and he was thereupon indemnified by a bond in the sum of $40,000; that the trespass and injury were done on the 15th November 1876, while the rule for an interpleader was not obtained until the 4th of December following; and that it was then asked for at the instance and request of the said bank after the giving the said bond of indemnity.

To this there was a rejoinder, denying the fact, averred in the replication, that the proceedings were begun at the instance and request of the Harrisburg Bank, and averring generally, that the orders and decrees, recited in the pleas, relieved both defendants from all liability to plaintiff for any loss or damage that he might have suffered "by reason of anything done by the sheriff under the writ of execution in said plea mentioned."

On these pleadings the court, Herman, P. J., delivered the following opinion:

"Upon the issue raised by the special pleadings in this case a question of law is presented for the decision of the court. It appears by the pleadings and the records and proceedings of this court laid before us by the defendants in support of their motion, that the goods and chattels, declared by the plaintiff to have been taken and carried away to his damage, were on the 15th of November 1876, levied upon by the sheriff, Joseph Totton, under an execution issued by the Harrisburg National Bank against Zacharias & Co. et al., to No. 1 January Term 1877; that the property thus levied upon was claimed by George A. Zacharias, and on the petition of the sheriff setting forth the facts of the levy and adverse claim of Zacharias, the court awarded an issue, under the Sheriff's Interpleader Act, wherein Zacharias was plaintiff, and the Harrisburg National Bank was defendant, to determine the claimant's right to the property. The first order on the sheriff's petition was made by the court on the 4th December 1876, by which a rule was granted upon the parties to appear and show cause, &c., and having appeared the feigned issue was

awarded the 9th December 1876. Zacharias appeared and filed his declaration as directed by the court but failed to give the required bond, and the property, excepting one hundred and six barrels of whiskey, was under an order of the court sold by the sheriff and the proceeds brought into court to await the determination of the feigned issue. Afterwards the trial of the feigned issue resulted in a verdict and judgment in favor of Zacharias, and thereupon he took out of court the proceeds of the sale of the property. The question is, whether the sheriff and execution-creditor are now liable to the claimant's action for this seizure and sale of his property.

"The Interpleader Act, as the preamble shows, was passed for the relief of the sheriff, and was intended to exempt him from the hazard and expense of actions that might otherwise be brought against him by persons claiming the goods upon which he had levied, who were not the parties against whom the process issued. There is nothing in the act which makes it imperative on the court to grant an issue when applied for by the sheriff. Its award or refusal is not a matter of right, but of sound discretion under all the circumstances of the case: Bain *v.* Funk, 11 P. F. Smith 185. But when the court, upon consideration of the circumstances of the case, has in the exercise of this discretion granted the issue for the relief and protection of the sheriff, and that issue has been determined between the claimant and the execution-creditor, I think, the sheriff's liability, to the claimant's action for a trespass in the seizure and sale of the goods, is at an end. If it were otherwise, the act would be of but little use. And if the sheriff is relieved from liability to the claimant's action of trespass, it follows that the execution-creditor is also relieved. If any just cause existed why the relief prayed for by the sheriff in this case should not have been granted the claimant should have shown it in answer to the rule upon him to appear and show cause. It is now too late. I am of the opinion that the proceedings and determination of the issue under the Interpleader Act constitutes a complete bar to the claimant's action of trespass against the sheriff as well as the execution-creditor for the seizure or sale of the property, and that the defendants in this action are entitled to judgment on the issue raised by the special pleadings.

"And now, to wit, March 7th 1879, upon the issue raised by the special pleadings in this case, judgment is rendered for the defendants."

This action of the court was assigned for error by plaintiff, who took this writ.

*S. Hepburn, Jr., L. Todd* and *S. Hepburn,* for plaintiff in error.—If the law is as held by the court below, the sheriff can commit no trespass in the execution of a writ of fieri facias, which

[Zacharias v. Totton.]

will not be cured by the granting of a rule to interplead. The Interpleader Law has never been construed to authorize the court to assess damages suffered up to the time of filing the petition. In England the protection of the court begins only with the granting of the rule to interplead, and liability remains for all damage done before that time: Walker v. Olding, 1 H. & C. 621. Nor was it necessary to make a levy under the circumstances. The property was in the actual possession of the plaintiff in this case; had been extensively advertised for sale at a public sale, to be held on the 15th November; the bidders were actually present, and the sale about to begin, when the sheriff made his levy; he had refused to make the seizure because of the open and apparent possession and ownership of the plaintiff, and demanded a bond of indemnity before doing so. Instead of demanding this bond, he could have applied for his rule before proceeding: Philips v. Reagan, 25 P. F. Smith 381. He assumed the risk of levy without the protection of the Interpleader Act, and the evidence alone could show whether he acted in such a way as to make himself liable for damages. We submit, therefore, that defendants were liable,

1. For all damage done by the seizure and detention, prior to the granting of the rule on December 4th 1876.

2. For *all* damage if there was collusion and an indemnity, concealed from the court, at the time of presenting the petition.

The question of damages was for the jury, and the court had no right to pass upon the plaintiff's right thereto. Even if the law is as held by the court below, as to the sheriff, we contend that the same protection does not extend to the execution-creditor.

*F. E. Beltzhoover, John Hays* and *Fleming & McCarrell*, for defendants in error.—The sole question was as to the effect of the interpleader. The replication of the plaintiff, by claiming damages for the seizure of the goods under the circumstances attending it between the levy on November 15th 1876, and the first order made under the interpleader on December 4th 1876, virtually admits that all claim to damages for the sale of the goods was barred by the interpleader.

The rejoinder of the defendants confined the issue to the effect of the interpleader, and this was exclusively a question of law. That it was for the court to determine, and not for the jury, requires no citation of authorities.

In none of the English cases is the sheriff liable for a trespass, in taking and seizing goods, but only where there is a trespass separate and apart from the seizure. No such allegation is made here. When an issue is framed to try the right to the property, under the order of court, all questions as to the relief of the sheriff are concluded by the order: Philips v. Reagan, *supra*. The act is for the relief of the sheriff, and to exempt him from hazard and

9 NORRIS—19

éxpense : Bain *v.* Lyle, 18 P. F. Smith 60 ; Hess *v.* Beates, 28 Id. 429.   The protection of the law runs from his seizure of the goods, not from the time he applies for the benefit of the act.   It does not confine relief to the time subsequent to his application therefor.

There is nothing in the act which makes it imperative on the court to grant an issue when applied for by the sheriff.   Its award or refusal is not a matter of right, but of sound discretion under all circumstances of the case.   The Interpleader Act makes no provision for a writ of error, whether the court grants or refuses an issue : Bain *v.* Funk, 11 P. F. Smith 187.

. We conclude, therefore : 1. The relief afforded is against any action for the seizure and sale of goods under an execution.   2. This relief is discretionary with the court, and upon cause shown will not be granted.   3. The grant of it is conclusive upon all parties.

Mr. Justice STERRETT delivered the opinion of the court, October 6th 1879.

The procedings under the Interpleader Act, resulting in a verdict and judgment in favor of the plaintiff, conclusively established his title to the goods seized by the sheriff as the property of Zacharias & Co., on the execution of the bank against that firm.   In the present action against the sheriff and execution-creditor for the wrongful seizure and sale of the goods, the question is whether the defendants were protected by those proceedings, and if so, to what extent.

The learned president of the Common Pleas being of opinion that the main facts, admitted by the pleadings, presented a question of law for his decision, held that the proceedings were a complete protection to both defendants, and a bar to the action of trespass.   He accordingly entered judgment against the plaintiff ; and this has been assigned for error.

The Interpleader Act, as appears by the preamble, was designed for the relief of the sheriff, and intended to exempt him from the hazard and expense of actions that might otherwise be brought against him by person, sclaiming the goods upon which he had levied, who were not parties against whom the process issued. There is nothing in the act which makes it imperative on the court to grant an issue when applied for by the sheriff.   Its award or refusal is not a matter of right, but of sound discretion, under all the circumstances of the case.   No provision is made for a writ of error, whether the issue is granted or refused : Bain *v.* Funk, 11 P. F. Smith 185.

It was never intended by the framers of the act that the sheriff, by direction of the execution-creditor, and under the shield of indemnity furnished by him, might seize and hold the goods of a stranger until he saw fit to institute procedings under the Interpleader Act, and in the end, after the claimant succeeded in estab-

[Zacharias v. Totton.]

lishing his title to the goods, invoke these proceedings as a complete protection against the demands of the injured party, based on acts of trespass committed before the proceedings were commenced. Such a construction of the act was never contemplated; nor is the sheriff required to incur any such risk. In Day v. Carr, 7 Exch. 883, it is said, "In many cases he will be justified in applying to the court before he perils himself by an actual seizure, under circumstances which might perhaps subject him not only to an action for the value of the goods, but also for damages for taking them." After quoting this sentence with approbation, the present chief justice, in Phillips v. Reagan, 25 P. F. Smith 381, says, "There is great reason, when the goods of one man may be taken under an execution against another, why an actual levy should not be necessary. Every purpose of the act may be accomplished without it. Especially is this so when the goods are in the actual possession, not of the defendant in the execution, but of an adverse claimant. A very serious injury might be done to such a party by closing his store and putting a watchman in charge, even for the short period of time necessary to procure the order of court for the interpleader."

Our act is made even broader than the English statute, from which it appears to have been copied, by substituting the word "entitled" for the word "intended." It provides that the sheriff may apply to the court or a judge at chambers for a rule on the parties whenever adverse claim has been or shall be made to any goods or chattels taken, or "entitled to be taken in execution."

In the present case, the sheriff found the goods in the possession of the plaintiff; knew that he had advertised them for sale, and was fully notified of his claim as owner. Under these circumstances he was not required to incur the risk of an actual levy and seizure of the goods. He might have presented his petition to the court or judge at chambers, setting forth the facts and asking a rule on the parties. If the court thought proper to entertain the application, it had full power to make all necessary orders in the premises. The sheriff might thus have acted from the beginning under the protection of the court, without committing any actual trespass; but instead of doing so, he disregarded the plaintiff's claim, levied on and took possession of the goods, on November 15th 1877. Although his petition for the rule on the parties is dated six days thereafter, it was not presented until the fourth day of December following. In the absence of explanation this delay was uncalled for. When the court was applied to it acted promptly in granting the rule, and subsequently, in awarding the issue; but no other order was either made or applied for. All that took place subsequently to the granting of the rule appears to have been done under the direction of the court, and for everything so done, the sheriff may justly claim protection and plead the fact in justifica-

[Zacharias *v.* Totton.]

tion; but for anything done before his petition was presented, he is not within the protection of the act.

The extent of the protection afforded by the English Interpleader Statute, which is almost identical with our own, was discussed in Walker *v.* Olding, 1 H. & C. 621, in which Pollock, C. B. says: "We think the plaintiff is entitled to damages only up to the time of the interpleader order. The verdict establishes that the defendants are trespassers and wrongdoers, as stated in the declaration, and the only question is, what is the damage caused to the plaintiff by the trespasses and wrongful acts so established? Now, up to the time of interpleader order, all the damage sustained by the plaintiff is caused by the defendants, who, up to that time, are with the sheriff joint trespassers and wrongdoers. But, on the making of the interpleader order the case is different."

The bank was not responsible for anything done by the sheriff, unless he acted by its direction. It is very clear, however, that if it indemnified the sheriff and directed the seizure of plaintiff's goods as averred in the pleading, it is liable to the same extent, at least, as the sheriff; but, we are of opinion that both defendants are fully protected by the interpleader proceedings in all that was done in pursuance thereof or under the direction of the court. The act provides a mode by which the title to personal property, and consequently its liability to execution as between the claimant and execution-creditor may be judicially determined; and, in the absence of proper averment and proof of malicious abuse of civil process, the parties to the proceeding cannot be considered trespassers while pursuing, in good faith, the remedy provided by law.

Upon the facts of the case, as presented, we are of opinion that neither of the defendants can justify under the Interpleader Act for anything done prior to the inception of the proceedings thereunder, but so far as they or either of them afterwards acted under the direction of the court, or in accordance with the interpleader proceedings, they are entitled to claim protection.

Judgment reversed, and a *procedendo* awarded.