Central National Bank of Peoria, to use of Styer & Bro.,
*v.* William Gallagher, Sheriff, Appellant.

*Bill of lading—Bill of exchange—Carrier—Title—Disclaimer—Sheriff
—Damages.*

Where a seller of goods draws a bill of exchange on the purchaser,
and attaches the bill of lading for the goods to the draft, and sends the
draft and bill of lading to a bank for collection, the seller retains title to
the goods only for the purpose of securing payment. If in such a case
the purchaser tenders the price of the goods, his title and right to posses-
sion will be complete.

A dealer sold a car load of oats, and consigned it in the bill of lading to
his own order. He drew a draft upon the purchaser, and attached the
bill of lading to the draft, but neglected to indorse the bill of lading. He
sent the draft and bill of lading to a bank in the town where the purchaser
lived. The carrier refused to deliver the oats unless the bill of lading
was indorsed by the seller. The bill of lading was accordingly returned
to the seller, who refused to indorse it. In the meantime oats had risen
in price, and the seller ordered the car to be delivered to another party.
The first purchaser then issued a foreign attachment, and the sheriff at-
tached the car. The levy of the attachment was by mere indorsement
upon the writ. The car was not disturbed. Subsequently the court
ordered the oats to be sold as perishable property. In an action against
the sheriff for a wrongful sale: *Held* (1) that the action of the first pur-
chaser in levying upon the oats was a disclaimer of title in himself;
(2) that the court was bound to assume that the vendor had resumed com-
plete possession of the property, and was within his rights in disposing
of it to another; (3) that under the circumstances the sheriff was liable
only for nominal damages.

Where a sheriff levies an attachment upon perishable goods without
disturbing the goods, and subsequently sells the goods under an order of
court, as perishable goods, he is liable only for nominal damages.

Argued Feb. 6, 1894. Appeal, No. 47, July T., 1893, by
defendant, from judgment of C. P. Chester Co., Jan. T., 1892,
No. 77, on verdict for plaintiff. Before STERRETT, C. J.,
GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Re-
versed.

Trespass against sheriff. Before WADDELL, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged as follows:

"In the view that I take of the case, Mr. Hemphill had no

property in this car of oats.   The firm of Bryan & Co. obtained a bill of lading on this car load of oats, drew their draft for the value of it upon Mr. Hemphill, sold that draft and bill of lading to the bank, and the bank forwarded it to the First National Bank of West Chester for collection.   [When it was presented to Mr. Hemphill, he took exception virtually to the form of the bill of lading, and in the estimation of the court he declined to pay the draft,] [2] unless the drawers of the draft and the consignors of the goods would indorse the bill of lading so he would get them.   It was therefore returned to the bank, and they virtually declined to do that.

   " [Now, in our estimation, there was no property in these goods in Mr. Hemphill.] [3]   He could only obtain that property by paying that draft, or, what was equivalent, tendering payment of it; but [to our mind he declined to pay the draft,] [2] for a very good reason probably ; naturally he should hesitate about paying that amount of money, if there was any question about his getting possession of the property ; but it was a declination to pay the draft, for reasons satisfactory to himself. Now as we understand the law, no title would pass in the property until the draft was accepted or paid.   [Mr. Hemphill in our estimation did not pay it; he neither accepted the draft, nor did he pay it.] [2]   [When he thus declined, as we regard it, the title to the property remained in the bank ; they had a right to sell that draft and that bill of lading to anybody else who chose to buy it.] [4]   If Messrs. Bryan & Co. saw fit to come in and reimburse them, they had the right to do so and get possession of the property.   They came in and paid the draft, took up the bill of lading, and restored the ownership of the property in them, or retained the title to that property, which never passed out of them except to the bank ; they had parted with that title to the bank, and [when they took up the bill of lading, the title to the possession of the oats returned to them ; and they had a right to do with those oats what they pleased. The oats belonged to them and they could sell them over again to anybody else who saw fit to pay the price.] [5]   As I remember the testimony, they obtained a second bill of lading, drew a second draft on Styer & Bro. before the attachment in this case issued, and that draft was again bought by the same bank.   They cashed the draft, and accepted it and the bill of

lading; and that all transpired before the attachment here issued on which these goods were sold by the sheriff, if I recollect aright. If .I am correct in that, then the title had passed out of Bryan & Co. into the bank, who again became the owners of this property, and they forwarded that draft to Styer & Bro., who accepted it and paid it. It seems to me that they became the owners of this property, inasmuch as that second sale took place prior to the attachment.

"If the attachment had issued and been levied between the returning of the first draft by the bank, and the issuing of the second, it would be a different matter; but, as I recollect the testimony, it all occurred after that sale of the second draft. It seems to me therefore that the title to this property passed to the bank, and through them to Styer & Bro., the plaintiffs here, and, in my judgment, they would be entitled to recover for this trespass on the part of the sheriff. Of course it was no willful trespass on the part of the sheriff; he executed the order of the court, and in executing the attachment it was in the line of his duty; when he was executing the writ he was doing no more than his duty; but he took the responsibility when he did so, and unfortunately, officers of the law must take these risks, and they can protect themselves by proper care.

"[Therefore it would seem to.me that the.only question for consideration of the jury, would be, what amount of damage has the plaintiff suffered by reason of this act on the part of the sheriff?] [1] As the case stands, in the estimation of the court, the amount of damage which the plaintiff has suffered would be the value of these goods, whatever that was, at the time this attachment issued. I don't know that there is any evidence in the case on that subject, except the amount of the draft, which has been testified to as $268.43.

"We hold that the sheriff was not justified in selling these goods; they did not belong to Messrs. Bryan & Co., in our estimation. They were levied upon and sold as the property of Bryan & Co., in order to pay a debt owing by them to the plaintiff in the attachment; and if they had been the property of Bryan & Co., then they could have been sold under that attachment, and the plaintiff would have had no cause of action; but inasmuch as the court has held that, under the evidence, there is no title to these goods in Bryan & Co., then the. sale

here was technically a trespass on the part of the sheriff, and the plaintiff. here was the bank. The goods, as we have said, were subsequently sold by the bank to Styer & Bro. They paid for them the draft-that was drawn on them, and they have never received the goods. Now what damage has the plaintiff sustained by reason of this act on the part of the sheriff? This is the only question for your consideration. There does not seem to be much question about that. The Supreme Court have laid down the rule, in cases of this kind, that [the estimate of damages is what it would cost the plaintiff to obtain the same goods at the time the sale took place. That in our estimation seems to be fixed by the amount of the draft which these plaintiffs paid for these goods.] [6] That is, at that time they could have bought similar oats, and the same quantity, for what they paid for these oats.

· " I say to you therefore that it would cost these plaintiffs the amount that they paid for these goods, to get their equivalent, to wit, $332.50. That in our estimation would be what it would cost them to procure the same character of goods at the time these goods were sold; and [in our judgment that would be the measure of damages in this case, $332.50, and they are entitled to interest on that amount from the 14th of November, 1890.] " [7]

Verdict and judgment for plaintiff for $372.84.

*Errors assigned* were (1–7) instructions, quoting them.

*R. Jones Monaghan* and *R. T. Cornwell, Gibbons Gray Cornwell* and *J. Frank E. Hause* with them, for appellant.—Plaintiff did not have possession nor the right to possession of the goods in controversy at the time of this alleged trespass, and cannot, therefore, maintain this action: Creps v. Dunham, 69 Pa. 456 ; Dixon v. Sewing Machine Co:, 128 Pa. 397 ; Fitler v. Shotwell, 7 W. & S. 16 ; Lewis v. Carsaw, 15 Pa. 34 ; Waldron v. Haupt, 52 Pa. 410 ; Weitzel.v. Marr, 46 Pa. 464 ; Gloss v. Black, 91 Pa. 421 ; Blakey v. Douglass, 44 Leg. Int. 104 ; Dicey on Parties to Actions, star pages 346, 359, 382 ; North v. Turner, 9 S. & R. 248 ; Overton v. Williston, 31 Pa. 160.

The sole purpose of the dealing with the bill of lading was to secure the payment of the price from Hemphill, and not to

retain the jus disponendi or right to dispose of the property at
will, and the title to the oats passed to Hemphill, subject to
his refusal to pay : Porter on Bills of Lading, §§ 521, 522, 525,
526 ; Bank v. Merchant's Nat. Bank, 1 Otto, 92 ; Mirabita v.
Bank, L. R. 3 Ex. D. 164 ; 38 L. T. R. (N. S.) 597 ; Bank v.
Bangs, 102 Mass. 291 ; Com. v. Fleming, 130 Pa. 138 ; Schu-
macher v. Eby, 24 Pa. 521 ; Morberger v. Hackenberg, 13 S.
& R. 26 ; Henderson v. Lauck, 21 Pa. 359 ; Schmertz v.
Dwyer, 53 Pa. 335 ; Bissell v. Steel, 67 Pa. 443.

The court erred in instructing the jury that the return of the
bill of lading and the draft by Mr. Hemphill for the indorse-
ment of Bryan & Co. was a refusal on his part to pay, and the
abandonment of all title or claim to the goods, and that Byran
& Co. could therefore dispose of them as they saw fit.

The subsequent pledge of the same car of oats by Bryan
& Co. to plaintiff bank as collateral for the payment of the
new draft on Styer &. Bro. conferred no title on the bank as
against Hemphill: 1 Benj., Sales, 506 ; Trans. Co. v. Steele,
70 Pa. 188 ; Decan v. Shipper, 35 Pa. 239.

The facts were for the jury, and the court erred in taking
the case from them.

The instructions of the court as to the measure of damages
were erroneous : State v. Manly, 11 Lea (Tenn.) 636 ; 1 A.
& E. Ency. L. 929 ; Zacharias v. Totton, 90 Pa. 291 ; Wat-
mough v. Francis, 7 Pa. 216 ; Dixon v. Sewing Machine Co.,
128 Pa. 406 ; Welsh v. Bell, 32 Pa. 16 ; Brady v. Whitney, 24
Mich. 154 ; Hall v. Robinson, 2 N. Y. 293 ; Moak's Underhill
on Torts, 97.

*Thomas W. Baldwin, Freas Styer* with him, for appellee.—
When Styer & Bro. paid the draft and came into absolute pos-
session of the bill of lading, they thereby possessed an owner-
ship good against any general creditor : Schumacher v. Eby
24 Pa. 525.

At the date of the attachment, Bryan & Co. had no interest
in the oats, and the attachment was not well laid : Megee v.
Beirne, 39 Pa. 50 ; Craig v. Sibbett & Jones, 15 Pa. 238 ;
Overton v. Williston, 31 Pa. 160.

The sheriff cannot justify his trespass on the ground that
the goods were sold as chargeable : Megee v. Beirne, 39 Pa. 63.

In a case in which Dixon v. Sewing Machine Co., 128 Pa. 397, cited by appellant, was considered, this court held that where one acquires title to property after levy and before sale he can maintain an action of trespass against the sheriff for selling the property as that of another: Kitchen v. McCloskey, 150 Pa. 376.

One who discounts for the shipper a draft on the consignee with bill of lading attached acquires title to the property: Holmes et al. v. The Bank, 87 Pa. 525; Holmes v. Bailey, 92 Pa. 57; Hieskell v. Bank, 89 Pa. 155; Bache v. Philips, 155 Pa. 103.

Where a bill of exchange for the price of goods is inclosed to the buyer for acceptance, together with the bill of lading, the buyer cannot retain the bill of lading unless he accepts the bill of exchange, and if he refuse acceptance he acquires no right to the bill of lading or the goods, of which it is a symbol, and the vendor may exercise his jus disponendi by selling or otherwise disposing of the goods so long at least as the buyer shall remain in default: 1 Corbin's Benj. Sales, §§ 502, 570, 583, 588; Bank v. Crocker, 111 Mass. 163; Mitchel v. Ede, 11 A. & E. 888; Bank v. Jones, 4 N. Y. 500; 2 Am. & E. Ency. L. 243; Copland v. Bosquet, 4 Wash. C. C. 591.

What the law contemplates in an assessment of damages is compensation to the injured party: Forsyth v. Palmer, 14 Pa. 96. Eby v. Schumacker, 29 Pa. 40, cannot be regarded as asserting a contrary doctrine: McInroy v. Dyer, 47 Pa. 122.

Opinion by Mr. Justice Dean, Oct. 1, 1894:

This is an action of trespass against the defendant, sheriff of Chester county, for selling a car load of oats. It appears from the evidence that, on October 3, 1890, E. D. Hemphill, of West Chester, purchased from Bryan & Co., of Peoria, Illinois, a car load of oats at the price of 44 cents per bushel. The oats was shipped (car 3666) by Bryan & Co., on October 11th following, consigned to Hemphill, the shippers receiving from the carrying company a bill of lading. To this bill, the shippers attached a draft on Hemphill for $268.43, the price of the oats, and transmitted it through the Central National Bank of Peoria, to the First National Bank of West Chester for collection; delivery of the bill of lading to be made

on payment of draft by consignee.   The draft and bill of lad-
ing reached the West Chester bank October 22d, and inclosed
with it was another draft and bill of lading from the same ship-
pers, Bryan & Co., on Hemphill for another car, No. 1292.
This last draft was properly indorsed, and was at once paid.
The bill of lading for the oats in the car 3666 had not been
indorsed by Bryan & Co., and the railroad company would not
deliver the oats without such indorsement.   Hemphill then re-
quested the West Chester bank to return the bill for indorse-
ment, and the same day wrote to Bryan & Co., informing them
of their neglect, stating that he had requested the bank to re-
turn the bill for indorsement, and as soon as that was done,
and the bill was returned, the draft would be paid.   The West
Chester bank, as requested, did return the bill to the Peoria
bank, informing it that the railroad company would not deliver
the car without the indorsement of Bryan & Co. on the bill of
lading.   On October 25th, Bryan & Co. replied to Hemphill's
letter of the 22d, that their indorsement of the bill of lading
was unnecessary, and on the 28th Hemphill replied, that he
had sent back the bill and draft, because the railroad company
would not deliver the oats without such indorsement, and that
he could do nothing else.   On the receipt of the bill and draft
by the Peoria bank, they handed them over to Bryan & Co.,
but instead of indorsing the bill of lading for return to West
Chester, they destroyed the draft, took the bill of lading to the
railroad agent at Peoria, surrendered it, took another of same
date, October 11th, consigning same car to Styer & Bro., Man-
ayunk, Pa.   This conduct of Bryan & Co. is explained by the
fact that in the interval oats had advanced in price about ten
cents per bushel; as they had consigned to Hemphill at 44
cents, they now made a new draft on Styer & Bro. at 53¼ cents
per bushel for the same car, making, instead of the $268.43
drawn for on Hemphill, $332.50, drawn for on Styer & Bro.
Bryan & Co. had this draft discounted by the Peoria bank, and
indorsed the bill of lading to the bank.

On the 29th of October, the car arrived on Hemphill's sid-
ing, and he tendered the railroad company a certified check
for the price of the oats, to save carrier's demurrage; but they
declined to deliver it.   On the 7th of November, Hemphill, as
a creditor of Bryan & Co., issued a foreign attachment against

them, and levied it on the car load of oats; on the 11th of same
month, at his instance, the Court of Common Pleas of Chester
County ordered its sale as perishable property and the Peoria
bank had due notice of this order.    On the 18th, the oats was
sold by the sheriff, in pursuance of the order of the court, for
$229.91.    The Peoria bank then brought suit, for use of Styer
& Bro., against the sheriff for trespass.    He contended at the
trial that the sale to Hemphill could not be defeated until he
refused to pay, and the bank, having knowledge of Hemphill's
position, stood in no better position, and that the facts were
for the jury.    The court, being of opinion that the return of
the draft and bill of lading for indorsement was a refusal to
pay, gave peremptory instructions for the plaintiff, and further
instructed the jury that the measure of damages was the
amount of the draft on Styer & Bro., $332.50.    The jury ren-
dered a verdict accordingly, and defendant appeals, assigning
for error the instructions as to liability of defendant, and as to
measure of damages.

The purpose of Bryan & Co. in shipping this oats, and draw-
ing on Hemphill for the price, with bill of lading attached, the
oats to be delivered on payment of the draft, was to retain title
only for purpose of securing payment.    The course of business
and correspondence show this, beyond question.    For every
other purpose the title was in Hemphill, had he chosen to so
regard it.    The oats was in the same situation, as to title, as a
consignment of goods delivered to a common carrier C. O. D.
The fact that the carrier was not directly the agent of the con-
signor for collection of the price, and that the end was attained
by transmitting the bill of lading attached to a sight draft
through banks, does not distinguish the transaction in its legal
effect, from that, where the carrier is the agent for collection.

There was just one reservation by the consignor, and that
was that the physical possession of the goods should not pass
to the consignee until he paid for them.    If Hemphill, on noti-
fication of the consignment and arrival of the oats, had declined
to pay for them, the right of action in Bryan & Co. against him
for the price would have been complete.    And when the oats
arrived, if Hemphill had tendered the price to Bryan & Co.,
his title and right to possession would have been complete.
There is not a break in the authorities on this point.    This was

not, as contended by the appellee, "an arrangement" for the sale of the oats to Hemphill; it was a sale, with a special reservation in the consignor of delivery, only, on payment of price; and that reservation could only be exercised on Hemphill's refusal to pay when notified of the arrival of the oats for delivery. Hemphill was ready to pay, but the carrier, because of an informality in the indorsement of the bill, declined to deliver. Then, while Hemphill was seeking to have this corrected, that he might pay for and receive the oats, the consignors, with a disregard of business honesty highly discreditable, re-consigned to another purchaser at a higher price. Hemphill, instead of tendering the price and asserting title, instituted suit against Bryan & Co., and levied a foreign attachment on the oats as theirs; then moved for the sale of the oats as the perishable property of Bryan & Co. In so doing, he deliberately disclaimed title in himself, averred title in Bryan & Co., and stamped the transaction with the same legal impress as that put upon it by appellees. All the evidence, bearing on the knowledge of the bank, as to Bryan & Co.'s want of good faith, and tending to show collusion between them and the bank, as well as the numerous authorities selected and presented with so much discrimination by counsel for appellant, become wholly immaterial in view of this unequivocal attitude taken by Hemphill. And the court was bound to take the same view of it, and assume, as Hemphill did, that Bryan & Co., the vendors, had resumed complete possession of the property, and exercised their right of disposition, when they re-consigned to Styer & Bro., and sold the draft on them with bill of lading attached to the Peoria bank.

But we think the rule as to the measure of damages adopted by the learned judge of the court below, in view of the facts, was not a correct one. The suit is against a public officer who obeyed his writ, and seized the goods on the attachment. This was, technically, a trespass, and for it the plaintiff is entitled to only nominal damages, for there were no circumstances of outrage or oppression. The real damage was by reason of the sale, and this was by the direct orders of the court to save loss of perishable property, pending litigation. The sheriff had no choice and no recourse to parties; his duty was simply to obey. And the order of the court is a complete protection to him:

1 Am. & Eng. Ency. Law, 929 ; Zacharias v. Totten, 90 Pa. 291. In the case last cited, the sale was by order of the court, of perishable property, pending interpleader proceedings, and this Court held that : " All that took place subsequently to the granting of the rule appears to have been done under the direction of the court, and for everything so done the sheriff may justly claim protection, and plead that fact in justification."

As the levy of the attachment was the mere indorsement on the writ, the car not being disturbed, and the railroad company summoned as garnishee, the jury should have been instructed that plaintiffs were entitled to only nominal damages. The appellant's 6th and 7th assignments of error are sustained, the others are overruled ; the judgment is reversed, and a v. f. d. n. is awarded.